UNITED STATES BANKRUPTCY COURT
SOUTEHRN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:  Case No. 20-13438-SMG
Chapter 13

GRISELL HERNANDEZ,

Debtor.
_____/

**CREDITOR'S MOTION TO DISMISS**
**DEBTOR'S CHAPTER 13 CASE**

Comes Now, Creditor, Antonio Balestena ("Creditor"), by and through undersigned counsel, and hereby files and serves this instant *Motion to Dismiss Debtor's Chapter 13 Case*, pursuant to 11 U.S.C. Sec.1307(c), and states as follows:

**I. Procedural Background**

1. On or about March 13, 2020 ("Petition Date"), the Debtor, **Grisell Hernandez** (the "Debtor"), filed a barebones Voluntary Petition [ECF No. 1] ("Petition") under Chapter 13 of Title 11 of the United States Bankruptcy Code purportedly seeking relief before this Court following entry of a judgment against her arising out of state court litigation (*see infra*).[1]

2. Debtor also caused, as the purported sole owner and officer of said entity, to be filed concurrently with the filing of the instant Bankruptcy Case, another barebones bankruptcy case (under Chapter 11 of Title 11) of a related entity, **Bullseye Coating And Blasting Corp.** in Case No. 20-13363-PGH (the "Bullseye Bankruptcy") on March 12, 2020, with regards to an entity that was found to be the recipient of fraudulently transferred assets (*i.e.* -- equipment, operations, *etc.* of a predecessor entity co-owned

---

[1] It must be noted that the attorney of record for the Debtor in this matter, Alberto Cardet, Esq., was also the trial attorney for the Debtor in the state litigation (*see infra*) which led to the Final Judgment (*see infra*) in excess of $800,000.00 against the Debtor.

by Creditor and Debtor) and was otherwise the "mere continuance" of the predecessor entity.

3. Debtor has yet to file her Schedules or Statement of Financial Affairs in this Case and is otherwise document-deficient in this matter (see ECF No. 5 – *Notice of Deficieny*).

4. Further, Debtor's related Bullseye Bankruptcy is also a barebones case which is document deficient (*see* Exhibit "A" hereto, a true and correct copy of the current docket of said Bullseye Bankruptcy).

5. Of importance in the Bullseye Bankruptcy as it relates to the instant Case is the fact that the instant Creditor, who is also a creditor in the Bullseye Bankruptcy, is identified as the largest single unsecured creditor of Bullseye therein with a debt of no less than $834,462.00 based upon a "Judgment".[2] *See* Exhibit "B: hereto (the Bullseye Bankruptcy Form 204 (List of 20 Largest Unsecured Creditors)).

II. **Pre-Petition Facts**

6. Pre-petition, Debtor was embroiled in litigation in two (2) separate lawsuits with Creditor, and with Creditor's father, as they related to ownership, operations and the fraudulent conduct of the Debtor and her newly created entity (**Bullseye Coating And Blasting Corp.** (hereinafter, "**Bullseye #2**")) to fraudulently transfer and abscond with the assets, equipment, location of operations and book of business of **Florida Powder Coating Solutions, Corp. d/b/a Bullseye Powder Coating** ("**Bullseye #1**")

7. Specifically, in State Lawsuit No. 1, the instant Creditor (as co-owner of Bullseye #1) sued Debtor and others as it related to the fraudulent transfer and disposition of the co-ownership interest of Creditor in Bullseye #1, the disposition and dissipation of the assets of Bullseye #1 and the fraudulent transfer of the assets of Bullseye #1 by Debtor and others in Case No. 15-020163 (25) in the 17th Judicial Circuit Court of Florida (Broward County Circuit Court).

8. Creditor, in said litigation (State Lawsuit No. 1), obtained an agreed injunction against, among others, the Debtor, to prevent her and others from "using,

---

[2] *See infra* regarding the "Judgment".

selling, disposing of, encumbering, conveying or transferring any of the assets, bank accounts, equipment or liabilities of" Bullseye #1, as well as "destroying, deleting, mutilating, concealing, altering or disposing of any of the assets and equipment of" Bullseye #1 until further order of the State Court. *See* Exhibit "C" hereto (the "Injunction Order").

9. Eventually, after years of motion practice, and a mutli-day trial, Creditor prevailed against Debtor and obtained a Final Judgment (see Exhibit "D" hereto) on January 30th, 2020, wherein the State Court found that:

   a. the assets transferred from Bullseye #1 to Bullseye #2 by Debtor were fraudulently transferred and remained and otherwise were in fact the assets of Bullseye #1 (see Exhibit "D at p.2);
   b. Bullseye #2 was in fact a mere continuation of Bullseye #1 (*see* Exhibit D at p.3);
   c. Directed the judicial dissolution of Bullseye #1 (*see* Exhibit D at pp. 3-4);
   d. Debtor incorporated a similarly named entity (Bullseye Powder Coat, Inc.), while operating Bullseye #1, at the same address as Bullseye #1 (see Exhibit D at p.4);;
   e. Debtor commingled the assets of Bullseye#1 with Debtor's other entities (see Exhibit D at pp.5-6);
   f. Debtor diverted income of Bullseye #1 to Debtor's other entities (see Exhibit "D" at pp.5-6);
   g. Debtor incorporated Bullseye #2 during the pendency of the ongoing State Lawsuit No. 1 (see Exhibit :D at pp.5-6);
   h. Debtor violated the Injunction by continuing to carry on business operations of Bullseye #1 after judicial dissolution and merging operations into Bullseye #2 (*see* Exhibit D at p.6);
   i. The computers of Bullseye #2 were wiped clean just eight (8) days prior to the deposition of the Debtor and they were liable for spoliation of evidence (see Exhibit #2 at pp.7-8);

    j. Debtor was liable to Creditor for the sum of **$291,029.00** as of entry of the judgment under Count I of the Complaint (see Exhibit "D at p.10);

    k. Debtor breached her fiduciary duty to Creditor (Count III of the Complaint) by commingling assets of Bullseye #1 with other entities; unlawfully removing Creditor as President of Bullseye #1; unlawfully removing Creditor as a signer on Bullseye #1's bank accounts; denying Creditor access to Bullseye #1's equipment and electronic data; and, Debtor's conspiracy to create a fraudulent loan for purposes of transferring Bullseye #1's assets to Debtor and Bullseye #2 (see Exhibit D at pp. 11-12);

    l. Unlawful distributions were made to Debtor and others (see Exhibit "D" at pp. 19-20);

    m. Debtor committed intentional and willful fraudulent transfers to herself and related entities (see Exhibit "D" at pp. 21-24);

    n. Debtor and others committed civil conspiracy (*see* Exhibit "D: at pp. 24-27);

    o. Debtor breached her joint venture agreement (see Exhibit "D" at pp. 28-29);

    p. Debtor committed c8iolatiuons of Florida's RICO statute (see Exhibit :D: at pp. 29-35);

    q. Final Judgment on Counts III, V, VI and VIII in the sum of **$175,883.00** against the Debtor (and others) in favor of the Creditor (see Exhibit D at p.36); and,

    r. Final Judgment on Count VII in the sum of **$265,385.25** for Civil RICO against the Debtor (and others) in favor of the Creditor (see Exhibit D at p.38).[3]

    10. In the interim, in State Lawsuit No. 2, Antonio Balestena Sr. (Creditor's father and co-owner of Bullseye #1) also sued, in proceedings supplementary, Debtor and Bullseye #2 in Case No. 15-20347(21) in the 17th Judicial Circuit Court of Florida

---

[3] The total of the monetary awards under the various counts awarded was $732,297.25 with interest at 6.83% per annum ($50,015.90 per annum or $137.02 per diem.

(Broward County Circuit Court) and obtained a final judgment (*see* Exhibit "E" hereto), jointly and severally against Debtor and Bullseye #2 for fraudulently transferring the assets of Bullseye#1 to Bullseye#2 and Debtor with the intent to hinder, delay or defraud said creditor, and in fact retained possession of such fraudulently transferred assets of Bullseye #1, concealed the transfer, while being sued by said creditor (in the midst of the litigation between them) and that Debtor had falsified a loan from herself (which never actually funded) to disguise the transfer; and the State Court went on to void the fraudulently recorded uniform commercial code financing statement relating to such fraudulent transfer and also found that Bullseye #2 was the "mere continuance" of Bullseye #1 (*see* Exhibit "E" hereto).[4]

11.     Thereafter, in an effort to avoid payment of the Final Judgment(s) (Exhibits D and E hereto), the Debtor filed this bankruptcy and the Bullseye Bankruptcy.

### III.  **MEMOR ANDUM OF LAW**

#### a.  **Unsecured Liquidated Debts Exceed Sec 109 Limits**

To qualify for a Chapter 13 proceeding, a debtor must "be an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000".  *See* 11 U.S.C. Sec. 109(e). Effective April 1, 2019, the debt limits set forth in Section 109 were increased to the sum of $419,275.00 as to the unsecured sums, and $1,257,850 for the secured debts.  *See*, 11 U.S.C. Section 104; and, Notice of the Judicial Conference of the United States, 84 F.R. 3488, dated Feb. 12, 2019.

---

[4] While this litigation was pending, Debtor filed a bankruptcy case as well to thwart the matter in Case No. 16-17566-LMI, which was a bankruptcy that was eventually dismissed as well.

Section 101(12) of the Bankruptcy Code provides that the term "debt" means "liability on a claim." *See*, 11 U.S.C. § 101(12).

In the matter at bar, it is beyond argument that, in fact, the instant Debtor has debts that exceed such debt limits set forth above. Specifically, the Final Judgment (Exhibit "D" hereto) in favor of the instant Creditor reflects liquidated unsecured debt of no less than $732,297.25 (plus interest at $137.02 per diem since January 30th, 2020).

This Final Judgment (Exhibit D) was entered after several days' trial, with the same legal counsel, Alberto Cardet, Esq., representing Debtor in that underlying litigation as in this Bankruptcy Case, and is liquidated as a matter of law. *See, e.g., In re Letterese*, 397 B.R. 507, (Bankr. S.D. Fla. 2008) ("A judgment which establishes monetary liability in favor of a party is noncontingent and liquidated as to the sum owed").

Therefore, this Debtor is not eligible for a Chapter 13 proceeding as her liquidated unsecured debts easily exceed the debt limits of Section 109(e); and, the Case should be dismissed with prejudice.

### b. Lack of Good Faith

"Chapter 13 is intended to encourage debtors to repay their debts, and is reserved for the 'honest, but unfortunate' debtor." *In re Baird*, 234 B.R. 546, 553 (Bankr. M.D.Fla. 1999). A Chapter 13 plan serving no purpose other than the discharge of an otherwise nondischargeable debt should be denied for lack of good faith. Id.

As reflected in the attached Exhibit D, the debt owed to the Creditor is nondischargeable; and this Case is a bad faith filing by this Debtor. It is undisputed that the Debtor herein lied to the state court, willfully spoiled evidence by washing clean the computers of Bullseye #2 shortly before the deposition of the Debtor in the State Court litigation, and she willfully violated an agreed injunction in regards to maintaining the assets of Bullseye #1.

Good faith is the central issue when deciding whether to dismiss or even convert a debtor's Chapter 13 petition. The good faith inquiry is conducted on both a subjective and objective basis, with the same evidence being relevant to both. *In re McGovern*, 297

B.R. 650, 656 (Bankr. S.D. Fla. 2003). Although good faith is a central concept in Chapter 13, it has not been defined in the Bankruptcy Code or its legislative history. *Id.* Accordingly, bankruptcy courts have generally held that good faith in a Chapter 13 proceeding is to be determined on a case-by-case basis, under a 'totality of circumstances' which requires consideration of a broad range of objective and subjective factors. *Id*.

In *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983), the Eleventh Circuit Court of Appeals outlined the relevant factors used in its 'totality of circumstances' approach in order to evaluate a debtor's good faith in the context of Chapter 13. These factors include, but are not limited to:

(I) amount of debtor's income from all sources;

(2) living expenses of the debtor and his dependents;

(3) amount of the attorney's fees;

(4) probable or expected duration of the Chapter 13 plan;

(5) motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and likelihood of fluctuation in his earning;

(8) special circumstances such as inordinate medical expenses;

(9) frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(II) the burden which the plan administration would place on the trustee;

(12) the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7;

(13) the accuracy of the statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; and

(14) extent to which the claims are modified and extent of preferential treatment among classes of creditors.

*McGovern*, 297 B.R. at 656-657, *citing Kitchens*, 702 F.2d at 888-889.

In a Chapter 13 proceeding, good faith is imposed on the debtor in two stages: first, the debtor must file his/her Chapter 13 petition in good faith; and two, the debtor must file his/her plan in good faith. *McGovern*, 297 B.R. at 656. In the instant case, the Debtor cannot meet the good faith standard because of her bad faith motivations and Creditor' s nondischargeable debt outweigh her desire to discharge same.

An important factor in the good faith analysis is when there is evidence that a debtor has filed a bankruptcy petition to either delay or frustrate the legitimate efforts of creditors to enforce their rights. *In re Baird*, 234 B.R. 546, 551 (Bankr. M.D. Fla. 1999). Generally, when a petition is filed for these purposes, bankruptcy courts routinely dismiss the petitions for lack of good faith. *Id*. The purpose and spirit of Chapter 13 is rehabilitation and repayment of debt by periodic payments made to a trustee under bankruptcy court protection, with the aim of providing honest and unfortunate debtors an opportunity to obtain a fresh start. *McGovern*, 297 B.R. at 658. If it is the debtor' s goal to achieve debt avoidance (the purpose of Chapter 7) as opposed to debt repayment (the purpose of Chapter 13), this tends to evidence a lack of good faith for Chapter 13 bankruptcy protection; and, therefore, the Chapter 13 petition should be dismissed. *Id.* at 659.

In the instant case, it is clear that the Debtor's purpose in filing this matter under Chapter 13 is to avoid the repayment of Creditor's nondischargeable Judgment (recently entered) as well as to retain her interests in Bullseye #2 and hide the assets that the State Court had already determined were truly those of Bullseye #1. The debts incurred by the Debtor are of the form and kind which were based upon actual fraud, and Debtor has made no effort to settle them other than running to bankruptcy court. As such, the Debtor's filing of his Chapter 13 petition is a clear abuse of the Bankruptcy Code.

Furthermore, the Debtor has not filed her Schedules or Statement of Financial Affairs, so there is no way to discern what source of income she has, other than assume that she intends to operate (in violation of an already still-in effect injunction) Bullseye#2 – which is a co-debtor on much of this debt to the Creditor, and which has already been

determined to be the **mere continuation** of Bullseye #1. As such, this Debtor wants to be rewarded and be able to retain the wrongful commingled assets and income of Bullseye #1 with Bullseye #2. This cannot stand and should not be allowed.

Additionally, as stated above, Debtor has contemporaneously filed Bullseye #2 into a separate Chapter 11 (for which Creditor will be seeking dismissal as well); and, Debtor has also filed a previous Chapter 13 bankruptcy (Case No. 16-17566-LMI) on May 26th, 2016 – which was dismissed on December 14, 2016 (after the Bankruptcy Court granted stay relief retroactive to that petition filing date to the Creditor's father) to prevent the litigation between her and the Creditor, as well as that of Creditor's father. The bankruptcy filing in 2016 was designed to delayed the process of the litigation between the Creditor and Debtor.

In addition, courts have viewed a Debtor's Chapter 13 bankruptcy, in which the majority of the unsecured debt sought to be discharged is nondischargeable, as also being filed in bad faith. *See McGovern*, 297 B.R. at 661.

Clearly, the Debtor's motivation in her Chapter 13 Plan is to avoid Creditor's nondischargeable Judgment and retain the fraudulently transferred assets of Bullseye #1. Such intent runs *contra* to the spirit of Chapter 13 and as such, the Debtor should not be permitted to stay in a Chapter 13 proceeding.

## Conclusion

This Case is a clear example of a Chapter 13 debtor's desire to thwart the spirit and purpose of the Bankruptcy Code. Indeed, the Debtor's pre-petition behavior, coupled with her purposeful filing of the related Bullseye #2 bankruptcy to retain the willfully fraudulently transferred assets and abscond with the profits and proceeds thereof, while an injunction still remains against any activity, is beyond pale; and this Court should not reward Debtor for such antics.

WHEREFORE, CREDITOR requests entry of an order of dismissal, with prejudice for a period of several years, as Debtor has shown her willful refusal to comply with even an agreed injunction to not dissipate assets, an award of sanctions

fees and costs against Debtor in favor of Creditor, and for such other and further relief this Court deems equitable and just.

Dated: March 19, 2020.

> Respectfully submitted,
>
> JAMES B. MILLER, P.A.
> Counsel to Creditor
> 19 West Flagler Street, Suite 416
> Miami, FL 33130
> Tel. No. (305) 374-0200
> Fax No. (305) 374-0250
>
> BY:__/s/_____
>   JAMES B. MILLER, ESQ.
>   Florida Bar No. 0009164

I hereby certify that a true and correct copy of this Notice has been served this 18th day of March, 2020, *via* the Court's CM/ECF service simultaneously with the filing of same with the Bankruptcy Court, upon those named below, and *via* US Mail upon those named on the attached service list who do not receive a copy *via* CM/ECF:

- **Alberto M. Cardet**   alcardet@gmail.com, G1615@notify.cincompass.com;ebbycmecf@gmail.com
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov
- **Robin R Weiner**   ecf@ch13weiner.com;ecf2@ch13weiner.com

I HEREBY CERTIFY that I am admitted to the Bar for the District Court in and for the Southern District of Florida and am in compliance with the additional qualifications to practice before this Court as set forth in Local Rule 2090-1(A).

Respectfully submitted this 19th day of March, 2020.

> JAMES B. MILLER, P.A.
> 19 West Flagler Street, Suite 416
> Miami, FL 33130
> Tel. No. (305) 374-0200
> Fax No. (305) 374-0250
>
> BY:__/s/_____
>   JAMES B. MILLER, ESQ.
>   Florida Bar No. 0009164